**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 2, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP393-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2023CF29

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL JASON DIELS,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Waushara County: GUY D. DUTCHER, Judge. *Affirmed*.

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Jason Diels appeals a judgment of conviction for felony bail jumping and a circuit court order denying his postconviction motion for relief. Diels seeks resentencing, arguing that the court displayed objective bias against him and that the court improperly appointed a guardian ad litem (GAL) for the child Diels was accused of abusing. We conclude that Diels has not demonstrated objective bias and that he forfeited his argument that the court erred in appointing a GAL. Accordingly, we affirm.

## BACKGROUND

¶2 Twenty-two-month-old A.B.[1] was taken to the hospital for significant bruising on her ears, forehead, and both sides of her head. The child's mother, Halle, explained that A.B. had been in the care of Diels, who is Halle's husband and A.B.'s stepfather, when the injuries were sustained. Halle said that Diels told her he was making lunch while A.B. was on the couch and that A.B. accidentally fell off the couch and struck a table.

¶3 Doctors were concerned that A.B.'s injuries were not consistent with the story of how they were caused. The left side of A.B.'s face suggested that she was struck by multiple objects as opposed to one fall onto a table. The hospital called Child Protective Services (CPS), and a CPS worker and detectives from the county sheriff's department responded to the hospital. The detective remarked that some of "the bruising looked defined like a hand … [as if] someone … grabbed and squeezed very hard [and left] bruising in the shape of a hand." A.B.

---

[1] To protect the privacy of the victim, we refer to the victim using initials that do not correspond to her real name. *See* WIS. STAT. RULE 809.86 (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

was transported to Marshfield Clinic, where a child trauma specialist determined that her injuries were "caused by being struck as an inflicted, non-accidental trauma." Based on the photographs taken at Diels's residence, the specialist concluded that the injuries "could not possibly have been sustained in the manner that had been described."

¶4 The detectives and CPS worker went to Diels's home on the day of the incident to take a statement from Diels on how the injuries occurred. Diels told them that his eighteen-month-old son had actually climbed onto the couch with A.B. and pushed her off the couch. The detectives learned that Diels had two open criminal cases, one in which he was charged with seven felony charges of animal cruelty causing death, and one in which he was charged with carrying a concealed weapon without a permit. Detectives noted that there was a dog in a kennel in Diels's home.

¶5 The State charged Diels with one count of physical abuse of a child based on A.B.'s injuries, and one count each of felony bail jumping and misdemeanor bail jumping. The felony bail jumping charge related to the alleged violation of bond conditions in the animal cruelty case, which included prohibitions on possessing or keeping any animals and committing any crimes. The misdemeanor bail jumping charge related to the alleged violation of bond conditions in the concealed weapon case, which included a prohibition on committing any crimes.

¶6 As the case proceeded in the circuit court, Halle made her unqualified support of Diels clear. At Diels's initial appearance, defense counsel urged the court to vacate the previously entered no-contact order for A.B. and for Halle's other child because Halle "would like Mr. Diels to be able to have contact

with her children."[2]  At Diels's preliminary hearing, Halle was there "supporting" Diels.  According to the complaint, Halle was upset by the hospital's decision to transport A.B. to Marshfield Clinic for further evaluation in the first place, which she expressed "in a loud and vulgar fashion in fro[nt] of [A.B.]"  Halle also indicated that she did "not wish to submit a Victim Impact Statement."

¶7      As the case approached trial, the circuit court proposed appointing a GAL for A.B. based on its perception that "the child's mother is [not] necessarily making decisions and acting in a manner that is consistent with what is best for the child victim."  The court asked the parties whether they wished to "weigh in" on this issue.  Defense counsel stated that she "would take no position" but asked "to be able to file a written objection later" "if Mr. Diels has an objection."  The court then appointed the same GAL serving in a Child in Need of Protection or Services (CHIPS) case involving A.B., over which the court was also presiding.  Diels was not a party in the confidential CHIPS case.

¶8      Later, Diels entered a plea agreement with the State pursuant to which he pled no contest to felony bail jumping in exchange for the charges of felony physical abuse of a child and misdemeanor bail jumping being dismissed and read in for purposes of sentencing.  At the plea hearing, the State explained that it "did not want Mr. Diels treating this as a situation where he can try and claim that [the child abuse] did not happen at all," so it was requiring Diels to "agree that the facts contained within the Criminal Complaint form the basis of what it is that took place and what it is that he did" as part of the plea agreement.

---

[2] The complaint alleged that three days before A.B. sustained the injuries discussed here, Halle's ten-month-old daughter was in Diels's care when she received injuries to her face that were similar to A.B.'s.

For her part, the GAL "appreciate[d] that the D.A. [was] asking for the admission with regard to [the child abuse charge]," but said her preference would be a plea to the abuse charge. The GAL further indicated that, if the circuit court accepted the plea, she would address the conduct at sentencing. The court conducted a plea colloquy with Diels, during which Diels confirmed his understanding that the court would consider the dismissed and read-in charges in determining his sentence. Diels also confirmed that the complaint "describe[d] what happened and what it was that [he] did" on the day A.B. sustained her injuries. The court accepted Diels's no-contest plea and set a date for sentencing.

¶9     At sentencing, the State asked the circuit court to impose the maximum sentence of three years of initial confinement followed by three years of extended supervision. So did A.B.'s father, whose first apparent involvement in the case was providing a statement to the writer of the court-ordered presentence investigation report. "In light of [A.B.'s father's] statements and different things that [the GAL was] privy to with regard to the pending CHIPS file," the GAL also asked the court to impose the maximum sentence. The defense requested probation with conditional jail time commensurate with time served. Neither Diels nor Halle made any statement.

¶10     As part of its sentencing remarks, the circuit court acknowledged that the offense for which Diels was being sentenced was bail jumping. Yet it "recognize[d] that the foundation of that charge is not that [Diels] had a dog in the house, in violation of the bond …, but that [Diels] committed another criminal act, and that that criminal act related directly to what happened to [A.B.]" The court "considered the position advocated by [the GAL]," who was appointed because, although A.B.'s father made a statement at sentencing, there had been "somewhat of a parental vacuum" given Halle's "apparent lack of recognition for what has

happened to her daughter." Ultimately, the court determined that the maximum sentence was appropriate.

¶11 Diels filed a postconviction motion seeking resentencing before a different judge. He argued that the circuit court's comments about the CHIPS proceeding—a confidential case about which Diels had no information—would cause an objective observer to doubt the court's impartiality and suggested prejudgment about the allegations against Diels. He also argued that the court lacked authority to appoint the GAL.

¶12 The circuit court denied the motion, concluding that Diels had not shown bias because the court's comments about the CHIPS case were tied to Halle's behavior as the reason for appointing a GAL, not to the allegations against Diels. The court also noted that A.B.'s father had no involvement in the case until the presentence investigation report was prepared and determined that its appointment of the GAL was appropriate to protect A.B.'s right to be heard. Diels appeals.

## DISCUSSION

¶13 Diels renews his arguments that the record demonstrates objective judicial bias at sentencing and that the circuit court erred in appointing a GAL for the victim. We address each argument in turn.

### I. Judicial Bias

¶14 "Whether a circuit court's partiality can be questioned is a matter of law that we review independently." *State v. Goodson*, 2009 WI App 107, ¶7, 320 Wis. 2d 166, 771 N.W.2d 385. There is a rebuttable presumption that the court has acted fairly, impartially, and without bias. *Id.*, ¶8. A defendant can rebut the

presumption by showing either subjective or objective bias by a preponderance of the evidence. ***Miller v. Carroll***, 2020 WI 56, ¶21, 392 Wis. 2d 49, 944 N.W.2d 542. While subjective bias "is not at issue" if the court believes itself to be fair and impartial, objective bias—actual bias or a serious risk of actual bias or prejudgment—depends on the perception of an objective and reasonable observer. ***Id.***, ¶¶21-22. Objective bias exists when "a reasonable person could question the court's impartiality based on the court's statements." ***Goodson***, 320 Wis. 2d 166, ¶9. "[I]t is the exceptional case with 'extreme facts' which rises to the level of a 'serious risk of actual bias.'" ***Miller***, 392 Wis. 2d 49, ¶24 (quoted source omitted).

¶15 Diels does not argue that the circuit court was subjectively biased. Instead, he argues that the court's comments about the CHIPS case involving A.B., over which it was presiding at the same time as Diels's criminal case, and its appointment of a GAL for A.B. suggest that the court had "developed preconceived notions about the allegations against Mr. Diels." Essentially, Diels argues that an outside observer would perceive the court as biased at sentencing because, as a result of information it learned in the connected CHIPS case, the court "already thought that Mr. Diels had harmed the child." Diels's argument fails for at least the following reasons.

¶16 First, objective bias is not automatically established when a circuit court presides over connected cases. *See **State v. Marcotte***, 2020 WI App 28, ¶40, 392 Wis. 2d 183, 943 N.W.2d 911 ("[W]e do not hold that a judge who has presided over drug court proceedings involving a particular defendant can never sentence that defendant after the revocation of his or her probation.").

¶17 Second, Diels does not argue or attempt to show that the circuit court prejudged his sentence, which is the only relevant question underlying Diels's

challenge, on appeal, to his sentence. *See Goodson*, 320 Wis. 2d 166, ¶13 (determining that a defendant showed objective bias because a reasonable person would conclude from the court's comments that the court had made up the court's mind about the defendant's sentence before the sentencing hearing). By the time Diels was sentenced, he had already entered his plea of no contest to the felony bail jumping charge. The predicate for that offense, as was made clear at the plea hearing, was the commission of a new crime—namely, the crime of child abuse. Diels confirmed his agreement that the allegations in the complaint, which included a description of the abuse, could be taken as a factual basis for his plea. He also agreed that the charge of abuse would be read in, meaning that it would be considered in sentencing. Thus, at sentencing, it was wholly appropriate for the court to consider Diels guilty of child abuse even absent a conviction on that count. Under these circumstances, there is no concern about prejudgment of guilt.

¶18 Because Diels fails to argue or show that the circuit court prejudged his sentence, we affirm on this issue.

## II. GAL Appointment

¶19 The State argues that Diels forfeited his argument that the circuit court erred in appointing a GAL for A.B. by failing to object to the appointment and failing to assert ineffective assistance of counsel on this basis in a postconviction motion. *See State v. Carprue*, 2004 WI 111, ¶¶46-47, 274 Wis. 2d 656, 683 N.W.2d 31 (a claim forfeited by "[a] defendant's failure to promptly raise concerns or object when he believes a judge is committing error" is normally "'address[ed] … within the rubric of the ineffective assistance of counsel'") (quoted source omitted); *State v. Counihan*, 2020 WI 12, ¶28, 390 Wis. 2d 172, 938 N.W.2d 530 ("Generally, if a claim is forfeited, [reviewing courts] address

that claim in the context of ineffective assistance of counsel."). In reply, Diels cites ***Counihan*** and argues that his claim should be addressed on the merits because a defendant is not required to object to an error that arose during the sentencing hearing. In ***Counihan***, the circuit court's remarks at sentencing showed that the court had considered information from analogous cases that it found through its own independent research, and our supreme court determined that the defendant's failure to object to the circuit court's consideration of information from those cases would not result in forfeiture of the argument that use of that information was improper. ***Counihan***, 390 Wis. 2d 172, ¶¶29-31. Applying forfeiture under such circumstances, the court said, would not promote the judicial efficiency that is the purpose of the forfeiture rule; instead, "defendants would likely seek adjournments for purposes of investigation, thus delaying sentencing hearings." *Id.*, ¶32.

¶20 As Diels points out, "[t]he forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." *See id.*, ¶27. We conclude this is not such a case. It may be true that the full scope of the GAL's role here was not apparent when the circuit court initially made the appointment, but the GAL communicated her intention to participate in sentencing before the sentencing hearing, at Diels's plea hearing. This is not a case of previously unknown or incorrect factual information being raised for the first time at sentencing as in ***Counihan***, but rather one of a GAL making a sentencing recommendation as she indicated that she would do in advance as part of her role. Diels made no objection when the GAL was appointed (despite an explicit invitation to "weigh in" on this issue), when the GAL indicated that she intended to participate in sentencing at the plea hearing, or at the sentencing hearing itself.

We affirm with respect to this issue based on our conclusion that under these circumstances, it is appropriate to apply forfeiture.

## CONCLUSION

¶21 For the foregoing reasons, we affirm the judgment of conviction and the circuit court's denial of Diels's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.